## No. 12,798.

### JOSEPH L. LEBOURGEOIS VS. GRAMERCY COMPANY, LIMITED.

A sugar refinery company entered into contracts with its customers being sugar planters (among others with plaintiff) by which the planters agreed to sell and deliver to the company on cars or switch nearest their respective plantations their crops of sugar cane, and the company bound itself to purchase and

receive said crop, to pay all railroad freights delivered under the contracts, and to pay cash to the planters at the rate of ninety cents per ton (less freight) of the price for each cent of the price of prime yellow clarified sugar according to official quotation of price.

Plaintiff's plantation being near the refinery, his particular contract was modified so as to permit him to deliver his crop at the refinery with his own carts, the refinery company agreeing to pay him twenty cents per ton more—*Held:* That the freight rate was not a mere deduction from a charge upon an otherwise fixed price for the cane per ton. It was one of the two factors upon which the company fixed the price itself. The price itself agreed upon was what would remain after deduction of a fixed rate of freight conventionally agreed upon between the parties from the second variable or sliding factor.

The agreement of the company with the plaintiff was that he should receive twenty cents net more than the other planters.

APPEAL from the Civil District Court for the Parish of Orleans. *Théard, J.*

W. S. *Benedict* for Plaintiff, Appellant.

Saunders & Miller and Farrar & Lemle for Defendant, Appellee.

Argued and submitted May 5, 1898.
Opinion handed down May 30, 1898.

The opinion of the court was delivered by

NICHOLLS, C. J.    Plaintiff seeks a judgment against defendant for two thousand six hundred and forty-one dollars and eighty cents under the following allegations:

That on the 20th of July, 1896, he entered into a written contract with the Gramercy Company, Limited, to sell and deliver to said company a crop of sugar cane for the grinding season of 1896, and in consideration thereof said defendant company agreed to pay weekly in cash therefor at the "rate of ninety (90) cents per ton (less freight) on the price for each cent of the price of prime yellow clarified sugar;" any balance remaining due to be paid at the end of the season.    That it amended said contract, which was by petitioner fully executed.    That he delivered four thousand four hundred and two tons, one thousand nine hundred and seventy-five pounds (say four thousand four hundred and three tons of cane) to defendant, and for which weekly payments were made, leaving unpaid a balance

of two thousand six hundred and forty-one dollars and eighty cents, which remained due and owing to petitioner by defendant.

That the estimated price per ton for cane delivered was two dol-- lars and ninety-two cents, but defendant deducted therefrom *freight* at sixty cents per ton, making cash payments of two dollars and thirty-two cents per ton, whereas said cane was delivered free of freight by cane carts of plaintiff, and no deduction was contemplated except when paid by defendant, and at the rate of sixty cents per ton, said balance was justly due and owing petitioner by defendant, for which amicable demand had been made without avail.

Defendant answered pleading first the general issue.

Further answering he averred that it admitted that on the twentieth day of July, 1896, it entered into the contract with plaintiff, which was annexed and made a part of plaintiff's petition. That by Section first of said contract, it agreed and obligated itself to pay for all cane delivered upon the conditions of the contract, the prices. indicated in the schedule appended to said contract, less sixty cents per ton railroad freight, based upon the weekly average of the actual sales of prime yellow clarified sugar, as reported by the New Orleans Sugar Exchange, for the week in which the sugar was delivered, the average of the first week after the cane was delivered to be taken.

Respondent further answering averred .that its agreement to pay the prices named in said contract was based on .plaintiff's agreement to load and deliver the cane in cars on switch, nearest to his plantation, and not less than thirty-five tons per day. That respondent's. object in requiring plaintiff and all parties that sold cane to it, to deliver by rail was, to do away with the expense and labor necessary to load the carriers and handle the cane where it was delivered by cart or wagon, it having provided machinery for the unloading of cars directly to the carrier when delivered by rail, and in addition thereto, to increase the receipts of the railroad company, the stock- holders of the Gramercy Company, Limited, being large stockholders. in its railroad company.

Further answering respondent averred that during the year 1895, it had contracts with plaintiff and others to purchase their cane in effect the same as in 1896, by which plaintiff and all others were to deliver their cane by rail, and that it settled in accordance with agreement with plaintiff and all others delivering by wagons and carts, by paying them twenty cents per ton net, more than was paid

net to those delivering by rail. That in 1896, in accordance with agreement it again settled with plaintiff and all others delivering by wagons and carts by paying them twenty cents per ton more than was paid to others not delivering by rail, as was done in 1895; but respondent repeatedly during the years 1895 and 1896, urged upon the plaintiff to deliver by rail in accordance with his contract.

Respondents further answering averred, that during contract with plaintiff, it was to make a settlement with him weekly for the cane delivered by him, and that in settlement of the first week respondent sent a check and voucher to be signed in full settlement of amount due him, based on thirty-five thousand-ton receipt, the price being twenty cents per ton, net, more than was paid others not delivering by rail, and that thereupon the said plaintiff complained that the settlement and check were not correct, and returned it. That on November 16, respondent wrote plaintiff, as per letter annexed. It subsequently returned the check and voucher to be signed in full settlement, and plaintiff received said check and cashed it, and still retained the proceeds thereof.

Further answering respondents averred that, after the receipt of this letter, plaintiff continued to deliver cane, and respondents continued to settle with him weekly, at the rate of twenty cents per ton, net, more than was received by other parties not delivering by rail, by forwarding to him weekly statements, stating that it was in full settlement, with checks attached to each statement, and plaintiff having accepted and cashed the checks, they being paid coupled with the condition that it was in full settlement, was now estopped from claiming that there was any balance due him, which estoppel it specially pleaded.

Further answering respondent averred that it had paid and settled in full for all cane received from plaintiffs.

The District Court rendered judgment rejecting plaintiff's demand, and he appealed.

In the contract between the parties, plaintiff (referred to therein as the party of the first part, and defendant as the party of the second part) agreed and bound himself to sell and deliver to the party of the second part, all of his crop of sugar cane which he might raise, except so much thereof as might be necessary to be retained for seed, and the party of the second part agreed and bound itself to purchase and receive from the party of the first part, not less than

two thousand and not more than four thousand tons of sugar cane during the grinding season of 1896, on the following conditions: First, the party of the first part agreed and bound himself to commence cutting and shipping cane, and to complete the same on dates to be thereafter agreed upon by both parties to this contract; and agreed and bound himself to load and *deliver on cars* on switch nearest to his plantation not less than thirty-five tons and not more than —— tons of cane per day, provided that any days lost through storms which interfered with loading shall not be counted.

*Fifth*—The party of the *second part agreed to pay all railroad freights* and produce taxes on all cane delivered under this contract.

*Sixth*—The party of the second part agreed to pay in cash to the party of the first part, or to his written order, at the rate of ninety (90) cents per ton (less freight) of the price for each cent of the price of prime yellow clarified sugar, one week intervening between the delivery of the cane and the payment therefor, this time being allowed for the purpose of obtaining official quotations and adjusting accounts. The balance due would be paid at the end of the season when the company had determined the total of cane delivered at the factory.

*Seventh*—The party of the second part agreed to pay the party of the first part for all cane delivered under the conditions of this contract, the prices indicated in the schedule appended to the contract, *less sixty cents per ton for railroad freight,* based upon the weekly average of the actual sales of prime yellow clarified sugar as reported by the New Orleans Sugar Exchange for the week in which the cane is delivered; provided that if there were no sales reported by the New Orleans Sugar Exchange for the week in which the cane was delivered, the average of the first week after the delivery of the cane should be taken.

Cars should be loaded with not less than fifteen tons of cane and might contain twenty tons. Not less than nine dollars per car (or sixty cents per ton on fifteen tons) should be deducted as the minimum freight on every car.

Plaintiff claims that the contract between defendant and himself, after being signed, was verbally modified, the modification consisting in an agreement that the plaintiff should deliver his cane at the mills of the defendant in his own carts, and that plaintiff should pay him twenty cents more per ton. Plaintiff's contention as to the

effect of the modification is that it entitles him to disregard entirely any reference to the deduction for railroad freights and to add twenty cents per ton to the price which would be payable if the railroad freight should be left out of view. Plaintiff's theory of the case is that the railroad freight referred to was not a factor in establishing the price fixed per ton for cane, but a deduction made as a charge or expense upon a price already fixed. The conclusion drawn is that if the expense for railroad carriage was not entailed for the reason that the planter himself delivered his cane, the *entire price fixed* would be due without deduction. That the defendant in this particular case not only agreed to this, but agreed that he would pay him twenty cents per ton more. The evidence on the subject of the modification of the contract is found in the testimony of the plaintiff and of Mr. Spelman, the president of the defendant company. On cross-examination of the plaintiff the following questions and answers were asked and made:

"Q. You say that prior to the hauling season of 1896, that Mr. Spelman stated to you that you would get twenty cents a ton more if you hauled it?

" A. Yes, sir; he said to me one day: ' Well, Joe, you will get twenty cents a ton if you haul it.'

" Q. If you haul it?

" A. If you haul it, and that was all he said.

" Q. What did you say to that?

" A. I didn't say anything; I left."

Mr. Spelman's testimony was to the effect that in the month of September of 1896, the plaintiff spoke to him, saying that he wanted, as he had done the year before, to deliver the cane by cart rather than by rail. That he (Spelman) urged him, as he had the year before, to deliver by rail, because all the company's system was rail work and it wanted to get all the cane that way. Plaintiff preferred, however, to deliver by cart rather than deliver by rail, and got his twenty cents extra per ton, and the company permitted it to be done, as it had been done the year before without any (written) modification or endorsement on the contract. He did not know that LeBourgeois said anything when he told him he would get twenty cents more per ton. It was understood that he was to go on the same as he had the year before. He did not know that any specific words were used. He urged him to deliver by rail, but

he preferred not to do so. The company's object in having cane delivered by rail was because its whole system was for rail and not cart delivery. It preferred to have it come in by rail because it had special machinery for unloading the cars and putting the cane on an incline which it had put up at great expense. That method of unloading the cars was far more economical to the company than handling the cane from carts. The company wanted to utilize its machinery for unloading. The object of rail delivery was not to force people whose places were only a mile or two off to ship by rail, but it was to avoid if possible any handling at all by hand, as a great part of the cost of making sugar was the handling on cane to a carrier. The company had machinery for putting the cane on the carrier, and it wanted to avoid doing any handwork. The company had a contract with plaintiff for 1895 calling for delivery by rail. Mr. LeBourgeois had a derrick and a switch for delivery by rail, but he preferred to deliver by carts provided he got paid for hauling instead of paying railroad freight. Therefore the contract for 1895 was modified to the extent that the company paid Mr. LeBourgeois twenty cents per ton more than it paid others net that shipped by rail. Twenty cents per ton net (was) to cover the cost of hauling instead of shipping by rail, so that although that contract called for rail delivery, by the personal contract Mr. LeBourgeois afterward delivered and the company accepted what he hauled in carts, and paid him twenty cents per ton more than if he had delivered by rail. It would have cost the company or any one else sixty cents a ton to have taken the cane by rail from Mr. LeBourgeois' place to the factory. The company had in 1895 and 1896 with a Mr. Shepp (who had a plantation near Mr. LeBourgeois') contracts similar to that with Mr. LeBourgeois and had settled with him both years precisely as it had done with Mr. LeBourgeois—that is, twenty cents per ton more than it paid other shippers. Mr. LeBourgeois on direct examination testified that after the grinding season of 1896 had commenced and upon the first settlement with the defendant company disclosing that it claimed he was only entitled to twenty cents per ton net more than it was paying to parties who shipped cane to it by rail, he went over to see Mr. Spelman about the matter. Spelman said, " LeBourgeois, you are paid exactly as you were in 1895." He answered " that he did not expect to be paid in 1896 as he had in 1895, not at all." Then Spelman said, " But you are." He replied,

" Why did you not give me a duplicate of the 1895 contract to sign instead of the 1896 contract, which is entirely different?"

Mr. Spelman said: " Come to the office and you will find you are getting as much money for your cane as you were in 1895." He (LeBourgeois) answered, " That cuts no figure, whether I am getting as much or more, but I expect to be paid on the basis of the contract I have signed.". Spelman said, " You certainly understood there would be a deduction of sixty cents freight," and he replied, " No, sir." He testified that he recalled to Mr. Spelman a remark he had made to the effect that " He did not see why he would persist in killing off his mules and wanted to haul that distance, when it would be more convenient for him and for the factory to receive his cane by rail;' to which remark he (LeBourgeois) had replied " that if he could deliver four thousand or four thousand five hundred tons, as he expected, it would be a net saving to him of one thousand eight hundred or two thousand five hundred dollars;" and Mr. Spelman shrugged his shoulders and said, " You know best." That though Mr. Spelman said he did not recollect that conversation, it did, in point of fact, take place the first week before delivery. He testified that when he saw the company persisted in placing the construction it did upon the contract, he went to see his attorney, who told him it was so late in the season that he had better go on, and he had done so under protest.

Defendant's counsel presents its view of the situation as follows:

" Plaintiff entered into a written agreement to sell his cane in 1896 to defendant. The contract expressly stipulates that the cane so sold should be delivered on cars. Mr. Spelman, the president of the refinery company, testifies that special arrangements were made at the refinery for unloading the cane from the cars by machinery, and that it was more convenient and cheaper for them to handle the cane from the cars than from carts. As between cane delivered on cars and cane delivered by carts, the company preferred to receive it on cars and could afford to pay for cane so delivered a higher price than it could afford to pay for same delivered by carts.

" The printed form of the contract with the company signed in 1896 by Mr. LeBourgeois contains, in the seventh paragraph, a stipulation that the company will pay the prices shown on a subjoined table for cane delivered on cars, less sixty cents a ton for freight. In order to ascertain the price therefore the sixty cents a ton must

be deducted.    And the price as thus ascertained was for cane deliv-
ered on cars; this is for cane which cost the company least to handle
when delivered, and for which it could therefore afford to pay the
highest price.

"The net price to the planter—what he really got for his
cane—was found by deducting sixty cents a ton from the figures
given in the table.

After signing, in July, 1896, a contract binding him to deliver his
cane on cars, Mr. LeBourgeois determined to deliver his cane by
carts.    He met Mr. Spelman just before the grinding season began
and told him of this determination.    Mr. Spelman, who was in a
hurry, remarked that he would then give Mr. LeBourgeois twenty
cents a ton more, and Mr. LeBourgeois assented.

"Mr. Le Bourgeois claims that by this he understood that he
would get twenty cents a ton more than the price stated in the table
without deducting the sixty cents a ton for car freight.

"For example, the price stated in the table, when sugar sold at
four cents, was three dollars and sixty cents per ton.    The planters
who delivered by rail would get only three dollars per ton, at this
price, and the total cost of the cane to the refinery was the three
dollars paid the planter, plus sixty cents paid for the freight, or
three dollars and sixty cents in all.    And for this price of three dol-
lars and sixty cents per ton the refinery got the cane on cars in the
manner it had been contracted for, and in the shape which cost it
least to handle.    Now, Mr. LeBourgeois claims that Mr. Spelman
meant that the refinery would pay him three dollars and eighty cents
per ton for his cane delivered in carts, when the cane of other
planters was costing only three dollars and sixty cents delivered on
cars.    In other words, he says that he understood Mr. Spelman to
mean that the company would pay him three dollars and eighty
cents per ton for cane in carts, while it paid only three dollars and
sixty cents per ton for cane in cars.    That is, the company was to
pay a higher price for the cane that cost it most to handle.    We sub-
mit that reflection should have precluded Mr. LeBourgeois from
attaching any such interpretation to Mr. Spelman's words.    He
knew that the refinery did not want the cane delivered in carts;
he knew that it had expressly stipulated that the cane should be
delivered in cars; he knew that the cane delivered on cars cost the
company less to handle, and yet he says that he inferred that the

company was willing to pay more for what cost it comparatively much than it would pay for what cost it comparatively little.

"Now, if the cane of Mr. LeBourgeois cost the company three dollars and eighty cents and the cane of the other planters cost the company three dollars and sixty cents, then the transportation of Mr. LeBourgeois' cane would cost the company eighty cents, while the transportation of the cane of other planters was costing only sixty cents. That is, the company would be paying more for delivery in carts than for delivery in cars, notwithstanding the fact that cane delivered in cars was handled at less cost than that delivered in carts.

"We submit, therefore, that it was impossible for Mr. LeBourgeois to have reflected when he supposed that the company meant to pay him more for his cart cane than it paid other producers for railroad cane. And as Mr. LeBourgeois' conclusion in this matter was reached without reflection, he can not be upheld in it, but will be bound by that sense which the words clearly meant in the situation in which they were spoken. And that sense very evidently was that Mr. LeBourgeois should receive twenty cents net more than the other planters. That is, in the case supposed, where the other planters on the basis of 3 5-16c. sugar, were getting 3 12-60, or $2.61 per ton net, Mr. LeBourgeois would get $2.81 per ton net, or 20 cents a ton more than the other. And he was settled with on this basis.

"That this was a proper and just basis is corroborated by the fact that in 1895 Mr. LeBourgeois and Mr. Shepp were both paid in this manner. In 1895 they received for hauling their cane in carts twenty cents per ton more than the other planters. This shows that they regarded twenty cents a ton as a suitable compensation to them, under the circumstances, for hauling their cane. Presumably, the same compensation for hauling would be just in 1896."

We are of the opinion that the judgment appealed from is correct. It is difficult to imagine upon what ground or from what motive defendant would have departed from the terms of its advantageous written contract to give plaintiff several thousand dollars more than the contract called for for a less desirable delivery of cane. In the general contracts (similar to the written one between plaintiff and defendant) made by defendant with its customers, the latter obligated themselves to load and deliver the cane sold on cars, on switch

nearest to their respective plantations, defendant itself paying freight and produce taxes.

Plaintiff is in error in supposing that the freight rate was a mere deduction from or a charge upon an otherwise fixed price for the cane per ton. It was one of the two factors upon which the company fixed the price itself. The price itself agreed upon was what would remain after deduction of a fixed rate of freight conventionally agreed upon between the parties from the second variable, or sliding factor.

When defendant said it would pay plaintiff twenty cents per ton more than it paid to other shippers, the obvious meaning of what was said was, that plaintiff should receive for his cane twenty cents per ton more than the other sellers would actually receive for theirs— that is to say, twenty cents more than what may be called the net price fixed in the written contracts. The judgment of the District Court is hereby affirmed.